AVERY COMPANY, Appellant, v. L. C. OLESEN, Appellee.

**SALES:** Warranties—Rescission. Evidence held to sustain a finding by the court that a warranty of a machine as well made had been breached, and that the vendee had rescinded the contract by reason of such breach.

**PLEADING:** General Denial—Issue of Waiver. A general denial to a pleading, setting up a breach of warranty of a machine, and praying the cancellation of the purchase-money notes, presents no issue as to a *waiver* of the right to rescind.

**APPEAL AND ERROR:** Abstracts—Unnecessary Amendment. Voluminous amendments containing but little that is material will, ordinarily, not be stricken, but will be penalized by a taxation of costs.

*Appeal from Palo Alto District Court.*—JAMES DE LAND, Judge.

APRIL 1, 1924.

SUIT in equity, to foreclose a chattel mortgage for the purchase price of the mortgaged property. The defense was an alleged rescission of the contract of purchase and sale, on the ground of breach of warranty and false representation; and a cross bill by defendant, asking the cancellation of the purchase-money notes and of the chattel mortgage. Issue was made on the cross bill by the statutory general denial. There was a decree for the defendant, as prayed. The plaintiff appeals.—*Affirmed.*

*Dunshee & Brody,* for appellant.

*McCarty & McCarty,* for appellee.

EVANS, J.—I. In July, 1922, the defendant purchased of

the plaintiff that part of a threshing machine known as the separator, together with its subsidiary parts. It was purchased under the following warranty:

1. SALES: warranties: rescission.

"All parts of the separator, self-feeder, straw stacker and ensilage cutter, and attachments ordered, or either of them, are well made, of good material and in a workmanlike manner, and should any parts break from defects or flaws within thirty days they will be replaced at Peoria, Ill., free of charge."

The defendant purported to rescind the contract of purchase on the ground of the alleged breach of the above warranty, and on the ground that certain representations that had been made were false and fraudulent. To our minds the real question upon the record is whether there was a breach of the warranty here quoted. The appeal presents nothing but this fact question. The defendant put the machine into use in the latter part of July, 1922, and continued his use thereof under more or less difficulty for fourteen or more days in the month of August. He purported to rescind his purchase in the month of September, and notified the plaintiff accordingly. A reading of the evidence brings us to the conclusion that the trial court was warranted in finding a breach of the warranty, in that the particular machine in question was not well made or made of good material. We do not think that the evidence would warrant a finding of fraudulent representations, nor did the trial court in its decree find any such. The defendant was an experienced thresherman and machinist, and had been the local agent of the plaintiff for several years. There is considerable evidence to the effect that trouble was encountered from the start in the attempted operation of the machine. An important shaft, designated as the crank shaft, appeared to be out of line, so that its tendency to heat by use could not be controlled by the application of lubricating oil. Water had to be applied thereto constantly, in order to prevent its overheating. The opinion of competent witnesses was that it was "sprung." Other parts of the machine were broken in the early operation, and rivets were sheared, all without discoverable causes. Certain important mortised joints in the woodwork and framework of the machine were found to be loose. Vertical posts mortised into timbers

at their base were drawn to an appreciable extent out of their sockets. Some of the wood used in the principal timbers of the framework was found to be partially decayed. This was true of one of the sills. It was also found that such sill was not made of "clear" lumber: that is, it contained a knot or knots. It is possibly true that all of these deficiencies could have been substantially remedied by a really willing purchaser. But we think they are not so unsubstantial as to legally require such a course on his part. It is made to appear also that the principal supporting timbers, known as the sills, consisted of a particular variety of southern pine, against which much complaint is directed by the defendant, on the ground that such timbers should have been made of hard wood. The plaintiff formerly used hard maple for such purpose; but as a result of many years of experimentation, it had adopted in its plan of construction the southern long-leafed yellow pine as the most suitable wood. The plaintiff company has been engaged for many years in the development of this kind of production and in establishing a trade for itself in the same. It is dependent for its success upon the excellence of its product and the reputation thereof among its customers. It could have no apparent motive to substitute one kind of timber for another unless it had reason to believe that the change would increase the efficiency of its production. We are not disposed, therefore, to accept the casual opinions of men who have operated threshing machines, as a sufficient impeachment of the judgment of a manufacturing company which for several years has adopted a particular kind or species of wood for its standard production. Nevertheless, we think the evidence is sufficient to warrant the finding that this particular machine was not well made nor of good material.

II. The plaintiff contends in argument here that, though the evidence would warrant a finding of damages in favor of the defendant, he was not entitled to the remedy of rescission because he had waived the same by his conduct in keeping and using the machine after he knew its deficiencies. It does appear that the defendant finished the threshing season before he declared a rescission. It does appear that he threshed about 14 jobs, totaling about 19,000 bushels of oats. The purported capacity of the machine

2. PLEADING: general denial: issue of waiver.

was about 2,500 bushels a day, though such capacity was never approximated in its actual use by the defendants. On the other hand, the defendant contends that his continued use thereof was in an effort to make it work; that he had not fully discovered all its defects until after he had ceased using it; that he had promptly complained within a day or two to the plaintiff of the first defects discovered by him; that, though he used the machine during the season, this was so only in the sense that he had engaged no other jobs, and could not engage any, because of the inefficiency of the machine.

Though the argument of appellant at this point would be quite persuasive if it had put itself upon that ground in the trial court, we do not think that the point is available to it now. If there was a breach of the warranty, then the defendant became thereby entitled to the remedy of rescission, upon appropriate notice and tender. It was a right, however, which he could easily lose by conduct amounting to a waiver or to an affirmance of the contract, in which event he would be confined to his remedy of damages. In the trial court, the plaintiff did not plead to the cross bill. It simply rested upon the statutory general denial. No question was raised of waiver or of affirmance of the contract or of undue delay in the rescission; so that that question received no consideration from the trial court. If the point had been made and sustained in the trial court, the defendant could have been properly protected by permitting him to set up damages as an offset to the price. It is beyond our power to afford him such protection here. We think, therefore, that the plaintiff is in no position here to press it. Indeed, the record as a whole impresses us that the plaintiff acted advisedly in its attitude, and that it saw a better degree of equity to itself in the remedy of rescission than in the remedy of damages, which might result in allowing the defendant to hold the new machine as his own at a comparatively nominal valuation.

III. Appellant has filed a motion to strike the amended abstract of appellee on the ground that it was wholly unwarranted and unnecessary, and that its material contents are but a repetition of the contents of the abstract, and that its other contents are mere irrelevancies. The abstract of appellant consists of 123 pages;

3. APPEAL AND ERROR: abstracts: unnecessary amendment.

whereas that of the appellee consists of 80 pages. The interests of a proper presentation of the record here require us to indulge liberality toward amended abstracts. We strike them only for quite exceptional reasons. If they are clearly unnecessary or unduly voluminous, we deem it a sufficient penalty, ordinarily, to tax costs of their printing to the offending party. In this case, the evidence in the court below was rendered unduly voluminous by many repetitions of the same evidence by the same witness, and by many irrelevancies of several witnesses. These repetitions and irrelevancies have occupied too much space in the amended abstract. Its really material additions to appellant's abstract are comparatively few. It will be ordered, therefore, that the costs of printing sixty pages thereof shall be taxed to the appellee himself, rather than to the plaintiff. Otherwise, the motion to strike will be overruled.

The decree entered below is, accordingly, affirmed.— *Affirmed.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.